IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DOUGLAS ENGRAHM, | ) | |
| | ) | 02:04-cv-1290-GEB-GGH |
| Plaintiff, | ) | |
| | ) | AMENDED[#] ORDER[**] |
| v. | ) | |
| | ) | |
| COUNTY OF COLUSA; COUNTY OF COLUSA | ) | |
| DEPARTMENT OF PUBLIC WORKS; JOHN | ) | |
| S. WRYSINSKI, individually and in | ) | |
| his capacity as Director of County | ) | |
| of Colusa Dept. of Public Works, | ) | |
| | ) | |
| Defendants.[***] | ) | |

Defendants County of Colusa, County of Colusa Department of Public Works (jointly referred to as "the County"), and John S. Wrysinski ("Wrysinski") move for summary judgment on various grounds. Plaintiff opposes the motion.

////

////

---

[#]    The last paragraph of this Order was amended to reflect the dismissal of Defendants' Counterclaim under 28 U.S.C. § 1367(c).

[**]    This motion was determined to be suitable for decision without oral argument.  L.R. 78-230(h).

[***]    The caption has been modified to reflect the Order filed June 8, 2006, which dismissed with prejudice all claims against Defendants Donald F. Stanton and David J. Shoemaker.

BACKGROUND

Plaintiff was employed by the County as a Road Maintenance Worker from August 1984 until his termination in February 2004. (Defs.' Statement of Undisputed Facts ("Defs.' SUF") ¶¶ 8, 9, 68. Plaintiff claims he was terminated by Defendants in retaliation for exercising his First Amendment rights, namely the filing of lawsuits against the County.  Prior to his termination and the filing of this action, Plaintiff had brought three lawsuits against the County, two in federal court and one in state court.  (Id. ¶¶ 12, 16, 20.) Plaintiff's prior lawsuits were substantially similar and alleged he had been retaliated against for complaining about safety and environmental violations.  (Id. ¶¶ 12-14, 16-18, 20.)  All of Plaintiff's prior lawsuits were resolved by motion in the County's favor.  (Id. ¶¶ 15, 19, 22.)

On September 4, 2003, Wrysinski, Plaintiff's supervisor, sent Plaintiff a Notice of Intent to Terminate ("Notice").  (Id. ¶ 61.)  The Notice indicated that because of his prior lawsuits Plaintiff was being terminated for insubordination, dishonesty, and discourteous treatment of the public and other employees. (Plaintiff's Statement of Undisputed Facts ("Pl.'s SUF") ¶ 11.) Plaintiff appealed the termination decision to the County Board of Supervisors ("the Board").  (Defs.' SUF ¶ 63.)

The Board conducted an evidentiary hearing regarding Plaintiff's termination on November 10, 2003.  (Id. ¶ 64.)  Plaintiff was represented by a labor representative at the hearing who filed a written answer to the charges brought against Plaintiff.  (Id. ¶ 65.) Plaintiff's representative made an opening statement at the hearing, submitted documentary evidence, cross-examined the County's witnesses,

and examined Plaintiff.  (Id. ¶ 68.)  At the close of the hearing a briefing schedule was established.  (Id.)  Plaintiff's representative later submitted a brief on behalf of Plaintiff.  (Id.)

On February 24, 2004, the Board issued written findings upholding Plaintiff's termination.  (Id. ¶ 69.)

DISCUSSION[1]

I.   Section 1983 claims

Plaintiff's claims under 42 U.S.C. § 1983 ("section 1983") allege Defendants terminated him in retaliation for his filing of three prior lawsuits against Defendants.

> "Under current Supreme Court doctrine, when a public-employee
> plaintiff alleges that []he has been terminated in retaliation
> for exercising h[is] First Amendment right to speak freely,
> courts undertake a t[wo]-step inquiry.  The standard is
> well-established: To prevail, an employee must prove (1) that
> the conduct at issue was constitutionally protected, and (2)
> that it was a substantial or motivating factor in the
> termination.  In order for a public employee's expression to
> be 'constitutionally protected' within the meaning of step one
> of the [two]-step test, two separate conditions must be
> satisfied. As a threshold matter, the speech must touch on a
> matter of 'public concern.'  . . .  If it does, then the
> reviewing court must determine whether the employee's interest
> in expressing h[im]self outweighs h[is] employer's interest in
> preventing potential workplace disruption."

Moran v. Washington, 147 F.3d 839, 846 (9th Cir. 1998) (citations omitted).

Defendants argue Plaintiff's section 1983 claims fail as a matter of law since his prior litigation is not constitutionally protected, because it did not involve a matter of "public concern," and even if it did the County's interests as an employer outweigh Plaintiff's interests in litigating the prior lawsuits.  Defendants

---

[1]   The standards applicable to motions for summary judgment are well known, and need not be repeated here.  See Reitter v. City of Sacramento, 87 F. Supp. 2d 1040, 1042 (E.D. Cal. 2000).

contend the Board's written findings support its position, and
preclude Plaintiff from relitigating these issues.  Plaintiff counters
that his prior lawsuits are protected by the First Amendment and that
the Board's findings have no bearing on his ability to seek redress
for a violation of his First Amendment rights in this Court.

### 1.   Matter of Public Concern

Defendants argue the Board's finding that Plaintiff's
lawsuit filed in state court "failed to serve any matter of public
concern" precludes Plaintiff from relitigating the nature of his prior
litigation.  Even if the requirements for preclusion were met, the
Board's finding was only made as to one of Plaintiff's three lawsuits.
Therefore, it must be determined whether Plaintiff's prior lawsuits
involved a matter of public concern.

"To determine whether [Plaintiff's prior lawsuits] involved
a matter of public concern, the content, form, and context of h[is]
lawsuit[s must examined] . . . .  This examination . . . requires an
exploration of [Plaintiff's] previous [lawsuits] to determine whether
h[is] speech in th[ose] case[s] involved a matter of public concern."
Lytle v. Wondrash, 182 F.3d 1083, 1088 (9th Cir. 1999) (citations
omitted).  Plaintiff's prior lawsuits alleged he suffered adverse
employment actions because of his complaints about the County's safety
and environmental violations.  "An expression relating to any matter
of political, social, or any other concern to the community is
protected."  Id. (citation omitted).  "The [County's compliance with
safety and environmental standards] was within the community's
concerns, so [Plaintiff's] speech criticizing [the County's non-
compliance] constituted protected speech.  Because the speech at the
heart of [Plaintiff's] prior lawsuit[s] was protected, [these]

1  lawsuit[s] qualified as litigation regarding a matter of public

2  concern." Id.

3          2.   Balancing Test

4          The next issue is whether Plaintiff's interest in that

5  litigation is outweighed by the County's interest as an employer in

6  preventing workplace disruption.  Whether a public-employee's speech

7  was 'protected' by the First Amendment at all depends upon a

8  "particularized balancing based on the unique facts presented in each

9  case." Voigt v. Savell, 70 F.3d 1552, 1560-61 (9th Cir. 1995).  This

10 balancing "entails a factual inquiry into such matters as whether the

11 speech (i) impairs discipline or control by superiors, (ii) disrupts

12 co-worker relations, (iii) erodes a close working relationship

13 premised on personal loyalty and confidentiality, (iv) interferes with

14 the speaker's performance of her or his duties, or (v) obstructs the

15 routine operation of the office." Rendish v. City of Tacoma, 123 F.3d

16 1216, 1224-25 (9th Cir. 1997).  Additionally, a finding that the

17 speech was false "undermines [a plaintiff's] First Amendment interest

18 for balancing purposes." Moran, 147 F.3d at 849.

19         Defendants argue the Board found facts pertinent to the

20 balancing of interests and those findings should be given preclusive

21 effect under Miller v. County of Santa Cruz, 39 F.3d 1030 (9th Cir.

22 1994), since Plaintiff did not seek review of the Board's findings or

23 decision.  Plaintiff concedes he did not seek review of the Board's

24 findings or decision, but argues exhaustion of remedies is not

25 required to bring a section 1983 action.  This argument misses

26 Defendants' administrative-finding preclusion doctrine issue on which

27 their motion rests.  See Embury v. King, 191 F. Supp. 2d 1071, 1083

28 (N.D. Cal. 2001) (explaining that the issue is whether the preclusion

5

doctrine applies to a section 1983 action).  The question is whether the factual findings of the Board are entitled to preclusive effect.

"[A]s a matter of federal common law, federal courts give preclusive effect to the findings of state administrative tribunals in subsequent actions under [section] 1983." Miller, 39 F.3d at 1032. "[T]he federal common law rules of preclusion . . . extend to state administrative adjudications of . . . factual issues, even if unreviewed, so long as the state proceeding satisfies the requirements of fairness outlined in United States v. Utah Construction & Mining Co., 384 U.S. 394, 422 (1966)." Miller, 39 F.3d at 1032-33. "The California Supreme Court [] established [in People v. Sims, 32 Cal. 3d 468 (1982), a] test to evaluate the preclusive effect to accord administrative agency determinations[,]" which incorporates the fairness requirements of Utah Construction.  Eilrich v. Remas, 839 F.2d 630, 633 (9th Cir. 1988) (citing Sims, 32 Cal. 3d 468). Therefore, the Board's findings will be given preclusive effect if the "hearing met the requirements of California law such that a California court would have accorded the determination preclusive effect." Miller, 39 F.3d at 1033.

Under the Sims test California courts will give preclusive effect to an administrative agency's findings when (1) the administrative agency acted in a judicial capacity and resolved disputed issues of fact properly before it which the parties had an adequate opportunity to litigate, (2) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated, (3) the previous proceeding resulted in a final judgment on the merits, and (4) the party against whom preclusion is asserted was a party at the prior proceeding.  Sims, 32 Cal. 3d at 479, 484.

There is no genuine dispute that California courts would give preclusive effect to the Board's factual findings had Plaintiff brought his section 1983 action in state court.  Plaintiff was afforded a full evidentiary hearing on the appropriateness of his termination.  Both Plaintiff and the County were entitled to call, examine, and cross-examine witnesses under oath or affirmation.  At the hearing, Plaintiff had representation, numerous witnesses testified, and Plaintiff and Defendants presented oral argument and written memoranda.  Both sides briefed the appropriateness of Plaintiff's termination.  The Board considered these arguments and decided the facts surrounding Plaintiff's prior litigation and subsequent termination before rendering its decision.  This record of the Board's procedures reveals Plaintiff had an adequate opportunity to litigate the appropriateness of his termination.  Further, Plaintiff was a party to the proceeding before the Board and the Board made necessary factual findings as to Plaintiff's litigation and its effect on the workplace, which became final when Plaintiff failed to seek judicial review of the Board's decision to uphold his termination.  Id.  Accordingly, the Board's factual findings will be given preclusive effect in this federal action when a decision is reached whether Plaintiff's interest in his prior litigation is outweighed by the County's interest in preventing workplace disruption.

The Board found the allegations in Plaintiff's prior litigation "were known by [Plaintiff] to be false" and "made for the purpose of avoiding assignment to work he considered undesirable and to protect himself from discipline for his lack of acceptable performance."  (Tirado Decl. Ex. XX at 10, Nov. 17, 2005.)  The Board

found that the litigation "allowed [Plaintiff] to intimidate his immediate supervisors to the point that they were afraid to say anything to [him]." (Id. at 7.)  Further, two supervisors "resigned from their positions . . . so as not to have to deal with [Plaintiff]" and the other supervisors "were extremely careful in making work assignments for fear of [Plaintiff's] allegations of retaliation." (Id.)  Additionally, the Board found "that employees of the [County] were afraid of being pulled into" the litigation, and employees "complain[ed] that they could no longer work with [Plaintiff] and that moral[e] was low." (Id. at 7, 10.)  As a result, the County's "workforce was divided into east and west sections so that not all employees would have to work with [Plaintiff]." (Id. at 10.)  Finally, the litigation "caused the department secretary, [] supervisors[,] and the department technicians to use large blocks of time researching the facts [surrounding Plaintiff's allegations]." (Id.)  "Many employees were [also] pulled off the job for many hours" to testify regarding the litigation. (Id.)  Consequently, Plaintiff's litigation "cost the [C]ounty much time [and] lost productivity." (Id.)

     Defendants argue the County's interest in avoiding workplace disruptions and maintaining discipline outweigh Plaintiff's interest in bringing his prior actions.  Several factors, given the undisputed facts established in the Board's findings, favor the County's need to avoid workplace disruptions and maintain discipline.  First, Plaintiff's litigation impaired the ability of his supervisors to assign work and discipline Plaintiff.  Second, Plaintiff's litigation disrupted the working relations between his co-workers.  Finally, Plaintiff's litigation obstructed the routine operations of the

County.  Although Plaintiff asserts he had an interest in bringing his three prior retaliation lawsuits, the Board's findings that Plaintiff knew the allegations in his complaints were false and that the lawsuits were brought to avoid undesirable assignments and as protection from discipline "undermines [Plaintiff's assertion of his] First Amendment interest [in his prior lawsuits] for balancing purposes."  <u>Moran</u>, 147 F.3d at 849.

Accordingly, the County's interest in avoiding workplace disruptions and maintaining discipline outweighed Plaintiff's interest in bringing his prior lawsuits.  Therefore, summary judgment is entered on behalf of Defendants on Plaintiff's section 1983 claims.

II.  <u>State Law Claims</u>

Since Defendants' motion for summary judgment has been granted on all of Plaintiff's federal claims, the issue is reached whether supplemental jurisdiction should continue to be exercised over Plaintiff's state claims.  Under § 1367(c), the district court may decline to exercise supplemental jurisdiction over a state claim if "the district court has dismissed all claims over which it has original jurisdiction . . . ."  The exercise of this "discretion . . . is informed by the [<u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966),] values of economy, convenience, fairness, and comity."  <u>Acri v. Varian Assocs., Inc.</u>, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quotation marks omitted).  However, "[i]n the usual case in which all federal-law claims are eliminated . . . , the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988); <u>Wade v. Reg'l Credit Assoc.</u>, 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a

1  federal claim, leaving only state claims for resolution, it should

2  decline jurisdiction over the state claims and dismiss them without

3  prejudice.").

4         Plaintiff's remaining state law claims include slander,

5  libel, negligent infliction of emotional distress, and violation of

6  the California Whistleblower Act.  Plaintiff argues his prior

7  litigation "deal[ing] with illegal dumping of oil"--"a clear[]

8  violation of state and federal law"--was the basis of his termination,

9  and therefore Defendants violated the California Whistleblower Act.

10 Defendants argue Plaintiff's prior lawsuits only disclosed alleged

11 retaliation, and the fact that Plaintiff's prior lawsuits included

12 allegations of "illegal dumping" is irrelevant to his claim alleged

13 under the California Whistleblower Act.  It is not clear from the

14 parties' briefs whether Plaintiff's allegations of "illegal dumping"

15 are irrelevant to this claim.  Nevertheless, the Gibbs values of

16 comity and fairness do not weigh in favor of a federal court deciding

17 these state issues, because as stated in Gibbs:  "Needless decisions

18 of state law should be avoided both as a matter of comity and to

19 promote justice between the parties, by procuring for them a

20 surer-footed reading of applicable law."  383 U.S. at 726.

21        Consideration of the Gibbs values reveals I should decline

22 exercising supplemental jurisdiction over Plaintiff's remaining state

23 claims.  Additionally, Defendants' state law Counterclaim should also

24 be dismissed "unless retention . . . is justified by judicial economy,

25 convenience, and fairness to the litigants." F.D.S. Marine, LLC v.

26 Brix Maritime Co., 211 F.R.D. 396, 398 (D. Or. 2001).  The Gibbs

27 values do not justify the continued exercise of supplemental

28 jurisdiction over Defendants' Counterclaim for breach of contract.

1   See <u>Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors,</u>

2   <u>Inc.</u>, 944 F.2d 1525, 1533 (9th Cir. 1991) (upholding district court's

3   dismissal of state law counterclaims under 28 U.S.C. § 1367(c) after

4   granting summary judgment on federal claims even though counterclaims

5   had been pending before district court for six years).  Therefore,

6   Plaintiff's remaining state law claims and Defendants' Counterclaim

7   are dismissed without prejudice under 28 U.S.C. § 1367(c) as of the

8   date on which this Order is filed.  The Clerk of the Court is directed

9   to close this action.

10          IT IS SO ORDERED.

11  Dated:  June 16, 2006

12
                              <u>/s/ Garland E. Burrell, Jr.</u>
13                            GARLAND E. BURRELL, JR.
                              United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28